1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10  GEORGE POWELL,                          )       No. CV 06-5082 RGK (FFM)
                                            )
11                  Plaintiff,              )
                                            )
12         v.                               )       REPORT AND RECOMMENDATION
                                            )       OF UNITED STATES MAGISTRATE
13  BEVERLY HILLS POLICE                    )       JUDGE
    DEPARTMENT, et al.                      )
14                                          )
                    Defendants.             )
15  _____    )

16         This Report and Recommendation is submitted to the Honorable R. Gary

17  Klausner, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and

18  General Order No. 194 of the United States District Court for the Central District of

19  California.  For the reasons discussed below, the Court recommends that the District

20  Judge enter an order granting defendant the City of Beverly Hills summary judgment

21  on plaintiff's First Amended Complaint.

22

23                              **I.  PROCEEDINGS**

24         On August 17, 2006, plaintiff, proceeding *pro se* and *in forma pauperis*, filed a

25  complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that he was

26  subjected to excessive force by Beverly Hills police officers.  On September 7, 2006,

27  the Court entered an order dismissing the Complaint pursuant to 28 U.S.C. §

28  1915(e)(2).  The Court reasoned that the Complaint's allegations were insufficient to

state a Section 1983 claim against the BHPD and to state a claim for excessive force. The Court granted plaintiff leave to amend the Complaint within 30 days to cure the deficiencies identified in the Order.  (September 7, 2006 Order at 1-4.)

On October 6, 2006, plaintiff filed a first amended complaint (the "FAC") against the Beverly Hills Police Department (the "BHPD"); Meyer, a "Police Official"; Chavez, a "Police Official"; M. Gilmore, a "Lieutenant Police Officer"; Long Beach Hospital; and "UCLA-Hospital Facility."  (FAC at 2-4.)  Plaintiff alleges that in August of 2005, he was stopped by Chavez and Meyers, even though plaintiff was not violating any law.  Plaintiff alleges that Chavez and Meyers handcuffed him tightly, cutting off circulation and ignoring plaintiff's complaints of pain.  (*Id.* at 5.)

Plaintiff further alleges that Chavez and Meyers contacted Lieutenant Gilmore to report plaintiff's conduct.  Gilmore, in turn, contacted a "Captain Curtis."  Plaintiff alleges that he was transported to either Long Beach Hospital or UCLA Medical Center for a mental health evaluation, where he was treated without his consent. Plaintiff alleges that he was arrested and detained in the hospital solely due to his status as an "out-patient mental illness person."  He alleges that defendants violated his due process rights, his Fourth Amendment right to be free from unreasonable searches and seizures, and his Eighth Amendment right to be free from "excessive pain without relief."  (*Id.* at 1, 5.)  Plaintiff demands compensatory damages, punitive damages, and fees and costs.  (*Id.* at 6.)

On October 13, 2006, the Court issued an Order Directing Service of Process by the United States Marshal as to defendants Meyer, Chavez, Gilmore, Long Beach Hospital, and UCLA - Hospital Facility.  On January 4, 2007, the City of Beverly Hills (the "City") answered the FAC on behalf of the BHPD.  (*See* Answer; *see also* Joint Status Report at 3.)  As of the date of this Report, no other defendant has answered the FAC; nor has plaintiff filed a Notice of Submission, with respect to any defendant,

/ / /

/ / /

1  stating that he presented the proper documents for service on such defendant to the

2  United States Marshal.[1]

3        On November 16, 2007, the City filed a motion for summary judgment (the

4  "Motion" or "MSJ").  In brief, the City contends that it is entitled to summary

5  judgment on plaintiff's claims because:  (1) there is no evidence that the City had a

6  custom, policy, or practice of detaining mentally ill persons; (2) there is no evidence

7  that the training the City provided to its officers reflected deliberate indifference to the

8  constitutional rights of those persons with whom the officers might come in contact;

9  and (3) in any case, there is no evidence that the City's officers violated plaintiff's

10  rights.

11        Plaintiff did not file an opposition to the Motion.  On December 3, 2007, the

12  City filed a reply in support of the Motion.  On December 4, 2007, the Court, *sua*

13  *sponte*, issued an order granting plaintiff a further 20 days in which to file an

14  opposition.  (December 4, 2007 Order at 1.)  The Court also informed plaintiff under

15  *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), that defendant had filed a motion for

16  summary judgment under Federal Rule of Civil Procedure 56, by which it sought to

17  have plaintiff's case dismissed on the ground that there was no genuine issue of

18  material fact for trial.  The Court further informed plaintiff under *Rand* that in order to

19  avoid judgment against him, plaintiff would have to set out specific facts in

20  declarations, depositions, interrogatory answers, or authenticated documents that

21  contradicted the facts shown in the City's documents and declarations.  (*Id.* at 2.)

22        Plaintiff did not file an opposition to the Motion.  On February 15, 2008, the

23  Court, *sua sponte*, granted petitioner further leave to file an opposition to the Motion

24  by February 29, 2008.  As of the date of this Report, plaintiff has not filed an

25  opposition.  The matter thus stands submitted.

26

27     [1] By separate order, the Court is ordering plaintiff to show cause why the action

28  should not be dismissed as against all defendants other than the City for failure to serve
process and failure to prosecute.

## II.  UNDISPUTED FACTS[2]

All police officers hired by the City are required to complete 720 hours of training at, and graduate from, a police academy certified by the Commission on Peace Officer Standards and Training ("P.O.S.T.").  Topics covered during P.O.S.T. instruction include, but are not limited to, the laws of arrest, search and seizure; the use of force, firearms and chemical agents; and people with disabilities.  (Declaration of Sergeant David Perez ("Perez Decl.") at ¶ 2.)  Part of the training regarding people with disabilities is designed to help peace officers become familiar with the causes and nature of mental illness in order to determine if an individual is gravely disabled or dangerous.  Currently, P.O.S.T. requires six hours of training on Persons with Disabilities.  (*Id.*)

After graduating from the academy, and upon being hired as a new recruit by the City, the new BHPD police officer must complete 21 weeks of an on-the-job training program under the supervision of a Field Training Officer ("FTO"), who evaluates the recruit's progress.  As part of that evaluation, the FTO meets with the sergeants and other FTOs to review and discuss the recruit's progress.  (*Id.* at ¶ 3.)  Once the recruit

---

[2]  In support of its contention that no violation of plaintiff's constitutional rights occurred, the City offers what purports to be an incident report dated August 14, 2005.  In the report, officers Chavez and Myers describe plaintiff's erratic behavior prior to their taking him into custody.  They also describe their transportation of plaintiff to UCLA Harbor Medical Center and plaintiff's conduct upon admission thereto.  (*See* Ex. D. to Spradlin Decl. (BH 0001-0004).)  Entries in a police report that are based on an officer's own observation and knowledge may be admitted into evidence as non-hearsay under 28 U.S.C. § 1733.  *Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973); *see also* 28 U.S.C § 1733(a).  However, the report itself must be authenticated.  28 U.S.C. § 1733(b); *see also* Fed. R. Civ. P. 56(e).  Because the City does not offer a declaration from its custodian of records (or other able official) that the incident report is what it appears to be, the Court will not consider it.  *See* Fed. R. Evid. 901(a) ("[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims"); *see also Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("[U]nauthenticated documents cannot be considered in a motion for summary judgment").

successfully completes on-the-job training with the FTO, he or she is assigned duties and a shift, which he or she works independently.  An assigned shift might include investigations, traffic, collision investigations, domestic disputes, and other duties as assigned.  (*Id.* at ¶ 4.)

As required by the P.O.S.T. Commission, all City police officers attend and complete a minimum of 24 hours of training every two years.  (*Id.* at ¶ 5.)  The City's officers meet this training requirement through various venues such as offsite training (*i.e.*, professional training programs or training provided by other agencies) or in-house training (*i.e.*, training that is provided in-house by City officers who have received P.O.S.T. certifications in speciality areas such as sensitivity training and the Americans with Disabilities Act).  (*Id.*)

The BHPD periodically publishes training bulletins to all department officers. Such bulletins include copies of articles or training materials highlighting a particular policy.  The bulletins may also be created to address "hot topics" in the community or in other agencies.  (*Id.* at ¶ 6.)  Past training bulletins have discussed the use of force and dealing with the mentally ill.  (*Id.*)

The City has written policies reflecting California Welfare and Institutions Code § 5150 ("Section 5150").[3]  Specifically, the City's policy manual contains procedural information regarding how to deal with mentally disturbed people.  (*Id.* at ¶ 7.)  The City also has training bulletins addressing Section 5150 issues.  (*Id.*)  The City's police procedures manual expressly provides that arrestees can be referred for psychiatric evaluation only if the arrestee is "mentally disordered," which, for

---

[3]  Section 5150 provides that "[w]hen any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer [or other designated persons] may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation."  Cal. Welf. & Inst. Code § 5150.

purposes of the City's written policies, means that the person appears to be a danger to himself or herself or to others, or appears to be gravely disabled.  (*Id.* at ¶ 8.)

It is the City's policy, and it so instructs its officers, that they must apply the "fair probability" test before making an arrest.  Under that test, a "fair probability that a suspect committed a crime" constitutes a collection of facts at the time of the arrest that would lead a reasonable police officer to believe that a crime was committed by the suspect.  (*Id.* at ¶ 9.)


**III. ANALYSIS**

A.    <u>Standard of review on motions for summary judgment</u>.

The Court must render summary judgment if the papers show that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.  Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  At the summary judgment stage, a judge's function is not to weigh the evidence or determine the truth of the matter but, rather, to determine whether there is any genuine issue for trial. *Anderson*, 477 U.S. at 249; *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (*en banc*).

The parties bear the same substantive burden of proof on summary judgment as would apply at a trial on the merits, including the plaintiff's burden to establish each element essential to his case. *Anderson*, 477 U.S. at 252; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact and that

summary judgment is proper as a matter of law.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy that burden either:  (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotations omitted).

There is no genuine issue of fact if the party opposing the motion "fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.  *Matsushita*, 475 U.S. at 586.[4]

B.   The City is entitled to judgment on the pleadings on plaintiff's claim that his Fourth Amendment rights were violated when the defendant officers tightly handcuffed him.

The City contends that it cannot be held liable under Section 1983 for plaintiff's tight handcuffing claim, as plaintiff's allegations are insufficient to state a claim for excessive force in violation of the Fourth Amendment.  (MSJ at 8.)  The Court interprets this as a request for judgment on the pleadings on this claim under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)").  *See* Fed. R. Civ. Proc. 12(c); *Mullis v.*

---

[4]  In order to state a claim for relief under Section 1983, plaintiff must demonstrate:  (1) a violation of rights protected by the Constitution or created by federal statute; (2) proximately caused by a "person;" (3) who was acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The primary issue raised in the Motion is whether plaintiff has sufficiently demonstrated that the City may be held liable for the alleged violations of plaintiff's protected rights.

*United States Bankr. Court*, 828 F.2d 1385, 1387 n.6 (9th Cir. 1987) (if a party files a motion for summary judgment and challenges only the sufficiency of the opposing party's pleadings, the court should treat the motion as one for judgment on the pleadings).[5]  A complaint may be dismissed as a matter of law for failure to state a claim for two reasons:  (1) lack of a cognizable legal theory; or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri*, 901 F.2d at 699.  The plaintiff's allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In a civil rights case where the plaintiff is appearing *pro se*, the Court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  Here, the Court finds that dismissal is warranted.

A municipality cannot be held liable under Section 1983 where no injury or constitutional violation has occurred. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986); *Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001).  Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances to effectuate a seizure. *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986).  Determining whether force used in making an arrest is excessive or reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue,

---

[5]  Federal Rule of Civil Procedure 12(b)(6) and 12(c) are "functionally identical," with the principal difference being the time of filing. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Both types of motions permit challenges directed at the legal sufficiency of the parties' allegations.  The same standard thus applies to both motions. *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 902 (S.D. Cal.2004) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (stating standard for motion for judgment on the pleadings) and *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (stating standard for motion to dismiss for failure to state a claim)).

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The Ninth Circuit has recognized that excessively tight handcuffing can constitute a Fourth Amendment violation. *See, e.g ., Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989).  However, in the cases cited, the plaintiffs suffered damage to their wrists or hands as a consequence of the handcuffs.  *See Wall*, 364 F.3d at 1109-10, 1112 (the plaintiff produced evidence that tight handcuffing "hurt and damaged [the plaintiff's] wrists"); *LaLonde*, 204 F.3d at 952, 960 (tight handcuffing left the plaintiff's wrist and hand numb, requiring medical treatment); *Palmer*, 9 F.3d at 1434-36 (tight handcuffing not only caused pain, but left bruises for several weeks); *Alexander*, 64 F.3d at 1323 (tight handcuffing caused the plaintiff's hands to swell and turn blue, with swelling and numbness lasting for months); *Hansen*, 885 F.2d at 645 (tight handcuffing caused injury, bruises, and a visit to a medical center for treatment). Here, as respondent points out (MSJ at 8), plaintiff does not allege that he suffered injury as a result of tight handcuffing.  (*See* FAC at 5.)  Judgment on the pleadings of this claim is therefore proper.  Because plaintiff has had an opportunity to submit any facts he believes support the claim, and because plaintiff has not submitted any facts suggesting that he suffered injury as a result of the handcuffing, leave to amend should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

9

C. __The City is entitled to summary judgment on plaintiff's claim that his due__
__process and Fourth Amendment rights were violated when he was allegedly__
__arrested without probable cause and involuntarily admitted to a psychiatric__
__facility__.

The City contends that plaintiff's remaining claim is without merit because the undisputed evidence shows that there was probable cause to detain plaintiff under Section 5150. (MSJ at 5-8.) As discussed above, the evidence the City offers in support of this contention is not authenticated and is thus inadmissible on summary judgment. *See* discussion, *supra* n.1. However, because the Court concludes that the City's alternative argument that there was no municipal policy, custom, or practice that could have led to an unconstitutional arrest and involuntary admission (*see* discussion, *infra*) is meritorious, the Court need not resolve whether the City has met its initial burden on summary judgment (*see Celotex*, 477 U.S. at 322-23) with respect to its argument that there was probable cause for plaintiff's arrest. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), holds that municipalities and other local government units are among those persons to whom Section 1983 applies. *Monell*, 436 U.S. at 690; *see also Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) (*per curiam*). However, a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

A policy "promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies *Monell's* policy requirement." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). A "permanent or well-settled practice" that gives rise to the constitutional violation may also constitute a

1   "policy or practice" under *Monell.  See City of St. Louis v. Praprotnik*, 485 U.S. 112,

2   127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); *Menotti v. City of Seattle*, 409 F.3d 1113,

3   1147 (9th Cir. 2005).  However, a single incident of a constitutional deprivation by a

4   municipal employee cannot create liability under *Monell*, "unless proof of the incident

5   includes proof that it was caused by an existing, unconstitutional municipal policy,

6   which policy can be attributed to a municipal policymaker."  *City of Oklahoma City v.*

7   *Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).

8       Plaintiff does not explicitly allege that a custom or policy on the part of the City

9   led to the alleged constitutional violations.  (*See* FAC at 1-6.)  However, construing the

10  FAC liberally and affording plaintiff the benefit of any doubt (*Karim-Panahi*, 839 F.2d

11  at 623), plaintiff alleges that his arrest, transport, and involuntary admission to a

12  mental health facility were discussed and assented to by several BHPD peace officers.

13  (*See* FAC at 5.)  To the extent that plaintiff claims that the individual defendants were

14  perforce acting pursuant to a municipal policy, the City is entitled to summary

15  judgment on plaintiff's claim.

16      The lawfulness of a detention of a mentally ill person for psychiatric evaluation

17  (in California, an arrest under Section 5150) is measured by Fourth Amendment

18  standards.  Under those standards, the detention must be supported by probable cause

19  to believe that the person is a danger to himself or others, or gravely disabled.  *See*

20  *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991) (holding that the seizure of a

21  suspected mentally ill person for psychiatric evaluation is "analogous to a criminal

22  arrest and must therefore be supported by probable cause"); *Harvey v. Alameda County*

23  *Med. Ctr.*, 280 F. Supp. 2d 960, 969 (N.D. Cal. 2003) (holding that seizure of

24  suspected mentally ill person under Section 5150 must be supported by probable

25  cause).  Probable cause exists under Section 5150 if facts are known to the officer "that

26  would lead a person of ordinary care and prudence to believe, or to entertain a strong

27  suspicion," that the person detained meets Section 5150's predicate conditions (*i.e.*, is

28  mentally disordered and is a danger to himself or others or gravely disabled).  *Bias v.*

1  *Moynihan*, 508 F.3d 1212, 1220 (9th Cir. 2007) (internal quotation marks omitted); *see*

2  *also* Cal. Welf. & Inst. Code § 5150; *Harvey*, 280 F. Supp. 2d at 969.

3          Here, the City presents evidence, undisputed by plaintiff, that it has written

4  policies that require officers to have probable cause before arresting a person under

5  Section 5150.  First, it has a policy that officers must apply the "fair probability" test

6  before making an arrest.  Second, its police procedures manual expressly provides that

7  an arrestee can be referred for psychiatric evaluation only if the arrestee is "mentally

8  disordered," which, under the City's written policies, means that the person appears to

9  be a danger to himself or herself or to others, or appears to be gravely disabled.  (Perez

10  Decl., ¶¶ 8-9.)

11          Thus, under those policies, a Beverly Hills officer could not arrest a person for

12  the purpose of transporting that person to a mental health facility for mental health

13  evaluation under Section 5150 unless there is:  (1) a collection of facts at the time of

14  the arrest that would lead a reasonable police officer to believe that (2) the person had

15  a mental disorder under which he was a danger to himself or others or gravely

16  disabled.  (*See id.*)  The policies thus comply with the requirement that, to comport

17  with the Fourth Amendment, a Section 5150 arrest must be supported by probable

18  cause that the arrestee meets the predicate conditions of the statute.  *See Bias*, 503 F.3d

19  at 1220; *Harvey*, 280 F. Supp. 2d at 969.

20          Plaintiff offers no evidence disputing that these policies exist.  Nor does he

21  adduce evidence that a different policy or "permanent or well-settled practice" exists

22  within the BPHD that would have led to his alleged unconstitutional arrest for

23  psychiatric evaluation.  Plaintiff thus cannot hold the City liable under *Monell* under a

24  theory that the alleged constitutional violation resulted from a City policy.

25          A failure to train municipal employees adequately may satisfy *Monell*'s policy

26  requirement.  *See City of Canton v. Harris*, 489 U.S. 378, 388-91, 109 S. Ct. 1197, 103

27  L. Ed. 2d 412 (1989); *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir.

28  2002); *Fairly v. Luman*, 281 F.3d at 917; but see especially *Board of County Comm'rs*

*v. Brown*, 520 U.S. at 409-10 (discussing limited scope of such claim).  Such a showing depends on three elements:  (1) the training program must be inadequate "in relation to the tasks the particular officers must perform"; (2) the city officials must have been deliberately indifferent "to the rights of the persons with whom the [local officials] come in contact"; and (3) the inadequacy of the training "must have been shown to have 'actually caused' the constitutional deprivation at issue."  *Merrit v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted).  With respect to factor (2), a municipality is deliberately indifferent to a person's constitutional rights when the need for more or different action is obvious and the inadequacy of the action taken so likely to result in the violation of constitutional rights, that the policymakers reasonably can be said to have been deliberately indifferent to the need.  *See Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992).

Here, the City adduces undisputed evidence that BHPD officers are required to complete 720 hours training at an accredited police academy and graduate therefrom.  As part of the accredited training program, BHPD police officers are given six hours of instruction in dealing with persons with disabilities.  The instructions includes training in the causes and nature of mental illness in order to determine if an individual is gravely disabled or dangerous to himself or others.

The City further adduces undisputed evidence that its officers' training does not end upon graduation from the academy.  New officers are supervised for 21 weeks of an on-the-job training program.  In addition, all City police officers must attend and complete a minimum of 24 hours of training every two years, which may include in-house training from officers who have received certification in specialty areas such as sensitivity training and the Americans with Disabilities Act.  In addition, the City periodically publishes training bulletins to all officers in the BHPD, including bulletins pertaining to the use of force and dealing with the mentally ill.  (Perez Decl., ¶¶ 2-6.)
/ / /

Given this undisputed evidence, a reasonable jury could not conclude that the

1   City should be held liable under *Canton* and *Monell* for a failure to train its officers.

2   The undisputed evidence shows that BHPD officers receive training, both at the

3   academy and afterwards, in dealing with mentally ill persons with whom they might

4   come into contact.  There is no evidence that such training was inadequate for the tasks

5   that the defendant officers performed.  Moreover, a reasonable jury could not conclude

6   from the record that the City's training requirements reflect deliberate indifference on

7   the City's part to the rights on the mentally ill.  That is, there is no evidence that:  (1)

8   there was a need for more or different training of BHPD officers with respect to their

9   treatment of the mentally ill; and (2) the City's response to such a need was

10  inadequate.  *See Merrit*, 875 F.2d at 770; *Oviatt*, 954 F.2d at 1477-78.

11          Finally, a policy of inaction may also be a municipal policy within the meaning

12  of *Monell*.  *See Fairly*, 281 F.3d at 918; *Lee v. City of Los Angeles*, 250 F.3d 668, 681

13  (9th Cir. 2001); *Oviatt v. Pearce*, 954 F.2d at 1477.  Such a policy constitutes grounds

14  for suit where the failure "amounts to deliberate indifference to the rights of persons"

15  impacted by the inaction.  *City of Canton*, 489 U.S. at 388.  To establish a local

16  governmental entity's liability for failure to act to preserve constitutional rights, a

17  plaintiff must establish:  (1) that an employee of the entity violated plaintiff's rights;

18  (2) that the entity had a policy; (3) that this policy amounts to deliberate indifference to

19  plaintiff's constitutional right; and (4) that the policy is the moving force behind the

20  constitutional violation.  *See id.* at 389-91; *Gibson*, 290 F.3d at 1194.  Given the

21  undisputed evidence of the City's training of its officers and policies regarding Section

22  5150 arrests, and the absence of any evidence presented by plaintiff in support of his

23  claims, a reasonable jury could not conclude that the City had a policy amounting to

24  deliberate indifference to persons with mental disorders.  (*See* discussion, *supra*.)

25  ///

26  ///

27          Plaintiff bears the burden of demonstrating that a municipal custom, policy, or

28  practice by the City led to his alleged wrongful arrest and involuntary psychiatric

admission.  *See Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004).  Petitioner has failed to make an adequate showing sufficient to establish the existence of that policy.  The City is accordingly entitled to summary judgment on plaintiff's claim.  *Celotex*, 477 U.S. at 322.

### RECOMMENDATION

Accordingly, IT THEREFORE IS RECOMMENDED that the District Court issue an order approving and adopting this recommendation and granting the City summary judgment on all of plaintiff's claims.

DATED: August 14, 2008

/ s / FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges, and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.